UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20584-CR-UNGARO/O'SULLIVAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JUAN ALAMEDA, JOSE GONZALEZ
and GILBERT GUERRERO,

    Defendants.
    _____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on defendant Juan Alameda's Motion to Suppress Post Arrest Statements (DE # 51, 8/30/07), defendant Gilbert Guerrero's Motion to Suppress Post Arrest Statement (DE # 53, 8/31/07) and defendant Jose Gonzalez's Motion to Suppress Statements (DE # 57, 9/4/07).  This case was referred to the undersigned by the Honorable Ursula Ungaro, United States District Court Judge for the Southern District of Florida for a report and recommendation in accordance with 28 U.S.C. § 636. (DE# 55, 8/31/07; DE# 65, 9/7/07). Having held an evidentiary hearing on September 7, 2007 and carefully considered the defendants' motions, the court file and applicable law, the undersigned respectfully recommends that defendant Juan Alameda's Motion to Suppress Post Arrest Statements (DE # 51, 8/30/07), defendant Gilbert Guerrero's Motion to Suppress Post Arrest Statement (DE # 53, 8/31/07) and defendant Jose Gonzalez's Motion to Suppress Statements (DE # 57, 9/4/07) be **DENIED.**

**BACKGROUND**

The defendants are charged with conspiracy to possess with intent to distribute cocaine in violation of Title 21, United States Code, Section 846 (Count I), attempt to possess with intent to distribute cocaine in violation of Title 21, United States Code, Section 846 (Count II), conspiracy to affect commerce by means of robbery in violation of Title 18, United States Code, Section 1951(a) (Count III), attempt to affect commerce by means of robbery in violation of Title 18, United States Code, Section 1951(a) (Count IV) and possession of a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c)(1)(A) (Count V). See Indictment (DE# 28, 7/27/07). Defendant Gonzalez is also charged with possession of a firearm by a convicted felon in violation of Title 18, United States Code, Section 922(g)(1) (Count VI). Id.

On August 30, 2007, defendant Alameda filed his Motion to Suppress Post Arrest Statements (DE # 51). Defendant Guerrero's Motion to Suppress Post Arrest Statement (DE # 53) was filed on August 31, 2007. Defendant Gonzalez's Motion to Suppress Statements (DE # 57) was filed on September 4, 2007. The government filed Government's Omnibus Response to Defendants' Motions to Suppress on September 6, 2007. On September 7, 2007, the undersigned held an evidentiary hearing. The government presented testimony from the following witnesses: Detective Kenneth Kiple, Detective Wayne Peart and Detective Virgil Valdes. The defendants did not call any witnesses. The undersigned admitted the Government's Exhibits 1-3 (Advice of Rights and Waiver form for each defendant) and defendant Guerrero's Exhibits A-B (Report of Investigation and post-arrest photographs of defendant Guerrero).

**FINDINGS OF FACT**

On July 13, 2007, the defendants were arrested by law enforcement and brought to a holding cell at the High Intensive Drug Trafficking Area division office (hereinafter "HIDTA") for processing.

**I.    Defendant Juan Alameda**

Around 10:00 p.m., Detectives Wayne Peart and Kevin Thomas removed defendant Alameda from the holding cell and brought him to an interview room. Defendant Alameda was not handcuffed and the detectives were unarmed. The detectives did not coerce or threaten defendant Alameda.

The detectives initially took biographical information from defendant Alameda. At defendant Alameda's request, they told the defendant about his charges. Shortly thereafter, Detective Peart read to defendant Alameda his Miranda rights from the Advice of Rights and Waiver form (Government's Exhibit 1). Defendant Alameda indicated that he understood his rights and agreed to speak to law enforcement. However, defendant Alameda did not want to sign any paperwork.

Defendant Alameda, who resides in Lehigh Acres, Florida, initially stated that he was in Miami to do some shopping. After the defendant made this exculpatory statement, Detective Peart and Detective Thomas decided to show the defendant videos which refuted the defendant's statement.  The detectives left the interview room to gather the videos.

When Detectives Peart and Thomas returned, they took defendant Alameda to an office to show him the videos. Defendant Alameda saw two videos. The first showed

a meeting between the defendant and an undercover agent. The second video was of the defendant putting a firearm into a confidential informant's vehicle on the date of his arrest. After viewing the videos, defendant Alameda stated he wanted to do the right thing. At 12:30 a.m.[1] on July 14, 2007, defendant Alameda signed a waiver of his Miranda rights. See Government's Exhibit 1. The waiver portion of the form contained the following statement:

> I have read this statement of my rights or it has been read to me, and I understand these rights. At this time I am willing to answer questions without a lawyer present. No promises or threats have been made to me, and no pressure or force of any kind has been used against me.

See Advice of Rights and Waive (Government's Exhibit 2). After defendant Alameda viewed the videos, ATF Special Agent Jessica Robago was brought in. At that point, Detective Peart left and Special Agent Robago and Detective Thomas continued interviewing defendant Alameda. Defendant Alameda admitted his involvement after viewing the videos and after signing the Miranda waiver.

## II. Defendant Gilbert Guerrero

Defendant Guerrero[2] was interviewed by Detective Virgil Valdes and Special Agent Stephanie Bobo. Defendant Guerrero was already in the interview room when

---

[1] Although defendant Alameda's interview began around 10:00 p.m. and he signed the Miranda waiver at 12:30 a.m., defendant Alameda was not interviewed continuously for two and a half hours. Detective Peart was the lead agent on the case. As such, Detective Peart had other things he needed to during the time he interviewed defendant Alameda, including answering questions from other officers who were interviewing the additional defendants.

[2] Defendant Guerrero received a cut below his lip during his arrest (Defendant's Exhibit B). Medical personnel rendered first aid to defendant Guerrero and determined he did not require stitches. The undersigned finds that this minor injury does not affect the voluntariness of defendant Guerrero's Miranda waiver.

Detective Valdes arrived. Defendant Guerrero was not handcuffed and Detective Virgil and Special Agent Bobo were unarmed.

After determining that defendant Guerrero could read and write English, Special Agent Bobo read to defendant Guerrero his Miranda rights from the Advice of Rights and Waiver form (Government's Exhibit 3). She asked defendant Guerrero if he understood his rights. The defendant said yes and wrote his initials next to each paragraph and signed the following waiver:

> I have read this statement of my rights or it has been read to me, and I understand these rights. At this time I am willing to answer questions without a lawyer present. No promises or threats have been made to me, and no pressure or force of any kind has been used against me.

See Advice of Rights and Waive (Government's Exhibit 3).

After waiving his Miranda rights, defendant Guerrero told law enforcement officers that he traveled to Miami to go to a strip club. Special Agent Bobo showed the defendant a video.[3] Defendant Guerrero indicated that this was his story and at this time, he was not going to say anything further. Detective Valdes told defendant Guerrero that he would let the defendant think about it. Detective Valdes and Special Agent Bobo left the room. Approximately 30 minutes later, Detective Valdes returned to the interview room. Defendant Guerrero told Detective Valdes that it was not his idea to come to Miami and that his cousin's boyfriend had suggested it.

### III.     Defendant Jose Gonzalez

Detective Kenneth Kiple and Detective Velazquez removed defendant Gonzalez

---

[3] It is unclear whether Special Agent Bobo showed the defendant the video in the initial part of the interview or after Detective Valdes returned to the interview room. However, this does not affect the undersigned's analysis.

from the holding cell and brought him at an interview room. Detective Kiple initially asked defendant Gonzalez for biographical information such as his name, address and telephone number. Detective Kiple then read an Advice of Rights and Waiver form (Government's Exhibit 2) to defendant Gonzalez and asked the defendant to also read it. Defendant Gonzalez signed the waiver portion of the form which stated:

> I have read this statement of my rights or it has been read to me, and I understand these rights. At this time I am willing to answer questions without a lawyer present. No promises or threats have been made to me, and no pressure or force of any kind has been used against me.

See Advice of Rights and Waive (Government's Exhibit 2).

Detective Kiple proceeded to question defendant Gonzalez. At the time, defendant Gonzalez was not handcuffed. Detective Kiple and Detective Velazquez were unarmed. Detective Kiple described the interview room as a "relaxed atmosphere." Defendant Gonzalez did not ask for an attorney.

## ANALYSIS

**I.    Defendant Juan Alameda**

Defendant Alameda seeks to suppress post arrest statements he made to law enforcement officers. (DE# 51, 8/30/07). Defendant Alameda argues that these statements were made during a custodial interrogation without the benefit of Miranda warnings. Id. at 2. At the evidentiary hearing, the government presented unrefuted evidence that defendant Alameda was read his Miranda rights and he voluntarily and intelligently waived them.

In order to establish a waiver of Miranda rights, the government must show, by a preponderance of the evidence, that the defendant voluntarily, knowingly, freely and

intelligently waived those rights, with knowledge of the consequences of the waiver. Colorado v. Connelly, 479 U.S. 157, 168 (1986). The validity of the waiver depends upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused. Edwards v. Arizona, 451 U.S. 477, 482 (1981). Factors that should be considered in making such a determination include: age of the accused, educational level, level of intelligence, whether there was advisement of constitutional rights, length of detention and the nature of the questioning. See Townsend v. Sane, 372 U.S. 293, 307 (1962).

Defendant Alameda was neither coerced nor threatened into making statements to law enforcement. Defendant Alameda was read his Miranda rights by Detective Peart, he waived those rights and proceeded to make an exculpatory statement before he was shown two videos. The fact that defendant Alameda did not initially sign a written waiver of his Miranda rights does not foreclose the issue. "Although a refusal to sign a waiver of rights form may indicate that the [defendant] is invoking his right to counsel, it is not conclusive proof that he has invoked the right." Mincey v. Head, 206 F.3d 1106, 1132 (11th Cir. 2000). See also United States v. Patman, 557 F.2d 1181, 1182 (5th Cir. 1977) (finding defendant's statements admissible despite his refusal to sign waiver because the "defendant stated that he was willing to answer questions and that he understood his rights"). Similarly here, Defendant Alameda indicated that he understood his rights and agreed to speak to law enforcement. The undersigned finds that defendant Alameda intelligently and voluntarily waived his Miranda rights. Accordingly, it is recommended that the defendant's statements not be suppressed.

### II.    Defendant Gilbert Guerrero

Defendant Guerrero argues that his "Miranda waiver was the direct result of the hostile and intimidating environment created by the agents." See Defendant, Guerrero's Motion to Suppress Post Arrest Statement (DE# 53 at 2, 8/31/07). According to defendant Guerrero, he invoked his right to remain silent and thirty minutes later, Detective Valdes ignored the defendant's invocation and began to question him again. Id. at 4.

To avail himself of the right to remain silent, defendant Guerrero must make an unequivocal invocation of that right. Coleman v. Singletary, 30 F.3d 1420, 1424 (11th Cir.1994). Law enforcement officers are not required to terminate an interrogation unless the invocation of the right to remain silent is unambiguous. See Medina v. Singletary, 59 F.3d 1095, 1100-01 (11th Cir.1995) (citing Davis v. United States, 512 U.S. 452 (1994)). If the invocation is ambiguous or equivocal, the interrogating officer has no duty to clarify the defendant's intent and may proceed with questioning. See United States v. Mikell, 102 F.3d 470, 476 (11th Cir.1996). The inquiry into the ambiguity of a defendant's invocation of his right to remain silent is objective, with the issue being whether the "[defendant] . . . articulate[d] his desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent." Coleman, 30 F.3d at 1424.

The report prepared by Special Agent Bobo states that "[defendant Guerrero] did not want to continue to speak with the officers." See Defendant's Exhibit A. However, Detective Valdes testified that the defendant told law enforcement that at this time he

had nothing further to say. The undersigned finds that defendant Guerrero did not unequivocally invoke his right to remain silent. Defendant Guerrero made an ambiguous statement indicating that at that time he was not going to say anything further and Detective Valdes did not have to stop questioning the defendant. Accordingly, the undersigned recommends that defendant Guerrero's Motion to Suppress be **DENIED**.

## III.     Defendant Jose Gonzalez

Defendant Gonzalez argues that his Miranda waiver was a direct result of a hostile and intimidating environment created by law enforcement officers and was not voluntary. See Defendant Jose Gonzalez's Motion to Suppress Statements (DE# 57, 9/4/07).

In order to establish a valid waiver of Miranda rights, the government must show, by a preponderance of the evidence, that the defendant voluntarily, knowingly, freely and intelligently waived those rights, with knowledge of the consequences of the waiver. Moran v. Burbine, 457 U.S. 412, 421 (1986). The validity of the waiver depends upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. Edwards v. Arizona, 451 U.S. 477, 482 (1981). Whether a valid waiver occurred will depend on the totality of the circumstances surrounding an interrogation. Moran, 457 U.S. at 421. Factors that should be considered in making such a determination include: the age of the accused, educational level, level of intelligence, whether there was advisement of constitutional rights, length of detention, and the nature of the questioning. See Coleman v. Singletary, 30 F.3d 1420, 1426 (11th Cir. 1994). "A valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession

was in fact actually obtained." Miranda v. Arizona, 389 US 436, 475 (1966).

Here, Detective Kiple read to the defendant his Miranda rights and also asked the defendant to read them. Defendant Gonzalez appeared to understand his rights. Defendant Gonzalez signed a written waiver of his Miranda rights (Government's Exhibit 3). There is no evidence that defendant Gonzalez was harassed or coerced by Detective Kiple. Detective Kiple described a relaxed atmosphere inside the interview room. The detectives inside the interview room were unarmed and the defendant was not handcuffed. The government has shown by a preponderance of the evidence that defendant Gonzalez knowingly and intelligently waived his Miranda rights. The defendant's motion to suppress statements should be **DENIED**.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that defendant Juan Alameda's Motion to Suppress Post Arrest Statements (DE # 51, 8/30/07), defendant Gilbert Guerrero's Motion to Suppress Post Arrest Statement (DE # 53, 8/31/07) and defendant Jose Gonzalez's Motion to Suppress Statements (DE # 57, 9/4/07) be **DENIED.** Pursuant to 28 U.S.C. §636(b)(1)(B) and (C), the parties may serve and file written objections to this Report and Recommendation with the Honorable Ursula Ungaro, United States District Judge, **within five (5) days of receipt of a copy of this Report and Recommendation**.[4] See Nettles v. Wainwright, 677 F.2d 404 (5th Cir.

---

[4] The ten-day time period generally allowed to file objections has been shortened to five days because this case is set for trial beginning on September 24, 2007.

1982).

RESPECTFULLY SUBMITTED, in Chambers, at Miami, Florida, this **10th** day of September, 2007.

_____
JOHN J. O'SULLIVAN
U. S. MAGISTRATE JUDGE

cc:

The Honorable Judge Ungaro
All Counsel of Record